UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DASHON[1] HOLLOWAY,

                              Plaintiff,

    - v -                                      Civ. No. 9:03-CV-1524
                                                      (LEK/RFT)

GLENN S. GOORD, JR.; JOHN GLASHEEN; FLOYD
BENNETT, *Supt. of Elmira Corr. Fac.*;
THOMAS RICKS, *Supt. of Upstate Corr. Fac.*; JAMES
THOMPSON, *Senior Counselor*; DAN KRESS, *Corrections
Counselor*,

                              Defendants.
_____

**APPEARANCES:**                                       **OF COUNSEL:**

DESHON HOLLOWAY
Plaintiff, *Pro se*
96-A-5863
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

HON. ANDREW M. CUOMO                    STEPHEN M. KERWIN, ESQ.
Attorney General of the State of New York       Assistant Attorney General
Attorney for Defendants
New York State Department of Law
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

    *Pro se* Plaintiff Deshon Holloway brings this civil rights action, pursuant to 42 U.S.C. §

1983, alleging the above named Defendants violated his due process rights pursuant to the

---

[1] Upon information and belief, the correct spelling of Plaintiff's name is "Deshon" as reflected in both his Complaint, Dkt. No. 1, and the Department of Correctional Services' Inmate Locator Website, *available at* http://nysdocslookup.docs.state.ny.us.

Fourteenth Amendment when he was transferred from Elmira Correctional Facility to Upstate Correctional Facility without first receiving a hearing. According to Plaintiff, when he was housed at Elmira, he was serving a keeplock disciplinary sentence in his cell, whereas upon his transfer to Upstate, he served the remainder of that sentence in a Special Housing Unit (SHU). *See generally* Dkt. No. 1, Compl.

Presently before the Court is Defendants' Motion for Summary Judgment, to which, despite being granted multiple extensions of time, Plaintiff has failed to respond. Dkt. Nos. 80, Defs.' Mot. Summ. J., filed on Jan. 17, 2007; 81, Order, dated June 5, 2007 (*sua sponte* extending Plaintiff's time to respond to July 9, 2007); 83, Order, dated July 3, 2007 (granting Plaintiff's request and extending his response time to July 31, 2007).

Instead of submitting opposition to the Motion, Plaintiff filed a letter, dated July 15, 2007, seeking permission to withdraw his action. Dkt. No. 84. Court staff inquired whether Defendants would consent to Plaintiff's voluntary withdrawal, to which Defendants tendered consent only upon the proviso that such dismissal be with prejudice. Dkt. Nos. 85, Notice to Defs.' Counsel, dated July 20, 2007; 86, Defs.' Resp., dated Aug. 21, 2007. In light of the ample passage of time since the initiation of this lawsuit and the filing of Defendants' Motion, and in light of the Defendants' posture to withhold any consent to discontinue lest it be on the merits, the Court finds it prudent to address Defendants' Motion on the merits.

## I.  FACTS

### A.  Effect of Plaintiff's Failure to Respond

Defendants filed their Motion for Summary Judgment on January 17, 2007, setting Plaintiff's response deadline for February 12, 2007. Dkt. No. 80. In accordance with the Local Rules of

Practice for the Northern District of New York, Defendants provided Plaintiff with notice of the consequences that may befall him should he elect not to respond to such Motion.[2] Dkt. No. 80; N.D.N.Y.L.R. 56.2. Approximately six months later, on June 5, 2007, this Court, in view of the fact that Plaintiff had not filed a response, *sua sponte* extended his time to respond and further emphasized the consequences of his failure to do so.[3]

Pursuant to this District's Local Rules, "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file to serve any papers . . . shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown." N.D.N.Y.L.R. 7.1(b)(3); *see also Douglas v. New York State Div. of Parole*, 1998 WL 59459, at *1 (N.D.N.Y. Feb. 10, 1998) (noting that plaintiff's failure to oppose defendants'

---

[2] Specifically, Defendants included in their Notice of Motion the following warning:

PLEASE NOTE that, pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, when a motion for summary judgment is made and properly supported, you may not simply rely upon your complaint, but you must respond by affidavits or as otherwise provided in that rule, setting forth specific facts showing that there is a genuine issue of material fact for trial. Any factual assertions in the moving parties' affidavits will be accepted by the Magistrate-Judge as being true unless you submit affidavits or other documentary evidence contradicting defendants' assertions. If you do not so respond, summary judgment, if appropriate, may be entered against you. If summary judgment is granted against you, your case will be dismissed and there will be no trial.

Dkt. No. 80 (emphasis in original).

[3] Specifically, the Court issued an Order stating:

**Plaintiff is warned that failure to oppose Defendants' Motion will result in this Court accepting the facts set forth by Defendants as true.** *See* N.D.N.Y.L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." (emphasis in original)). **Plaintiff is further warned that failure to respond may, if appropriate, result in the granting of Defendants' Motion, in which there will be no trial.** *See* N.D.N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.").

Dkt. No. 81 at pp. 1-2 (emphasis in original).

dispositive motion, and his failure to show good cause for the omission, may alone justify granting the motion). "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Even in the absence of a response, Defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id.*; FED. R. CIV. P. 56(c); N.D.N.Y.L.R. 7.1(b)(3). Because Plaintiff has failed to raise any question of material fact, the Court will accept the facts as set forth in Defendants' Rule 7.1 Statement of Facts, supplemented by Plaintiffs' verified Complaint, as true. *See* Dkt. Nos. 1, Compl.; 80-9, Defs.' 7.1 Statement; *see also Lopez v. Reynolds*, 998 F. Supp. 252, 256 (W.D.N.Y. 1997).

### B. Uncontested Facts

At all times relevant to the Complaint, Plaintiff was an inmate in the custody of the New York State Department of Correctional Services (DOCS). On January 5, 2001, Holloway was transferred from Elmira Correctional Facility, a maximum security prison, to Upstate Correctional Facility, a maximum security prison. Defs.' 7.1 Statement at ¶ 2; Dkt. No. 80-2, Donald Selsky Decl., dated Oct. 13, 2006, Ex. B (Pl.'s Transfer History). This transfer is the subject of his civil rights claims.

As indicated on Holloway's Transfer History Report, the reason for Plaintiff's transfer was his "unsuitable behavior." Selsky Decl., Ex. B. This is not the first time Plaintiff was transferred to another facility due to his unsuitable behavior.[4] In fact, Plaintiff's transfer to Elmira from Southport Correctional Facility was also due to his unsuitable behavior. *Id*. (Transfer, dated

---

[4] In reviewing Plaintiff's Transfer History, we note at least four transfers due to his "unsuitable behavior" between May 1998 and December 2000. Dkt. No. 80-2, Donald Selsky Decl., dated Oct. 13, 2006, Ex. B (Pl.'s Transfer History).

November 28, 2000). Upon his arrival at Elmira, Plaintiff had an aggregate disciplinary keeplock sentence of approximately 270 days, stemming from six Disciplinary Hearings Plaintiff previously received during a span of six months. Defs.' 7.1 Statement at ¶ 6. These disciplinary sentences were based on various Misbehavior Reports Plaintiff received while incarcerated at Marcy Correctional Facility and Mid-State Correctional Facility. *Id*. at ¶¶ 7-10. For each of the six Misbehavior Reports issued, Plaintiff received a separate Disciplinary Hearing resulting in six separate guilty determinations, each with its own separate sentence. *Id*. Plaintiff only filed appeals in three of these Hearings, all of which were affirmed. *Id*. at ¶¶ 8 & 11-12.[5] Plaintiff makes no allegations as to the inadequacy of any of these Hearings and none of the Hearing Officers who presided over the six Disciplinary Hearings is named as a Defendant.

Prior to his transfer to Upstate, Holloway was held in long-term keeplock at Elmira for approximately one month and eight days. *Id*. at ¶ 14. The cell Plaintiff was confined in could also be used for a general population inmate or an inmate transitioning to general population from SHU. Dkt. No. 80-5, Dan Kress Decl., dated Jan. 11, 2007, at ¶ 2. Under the keeplock confinement, Plaintiff was locked in his cell for twenty-three hours a day. Dkt. No. 80-6, James Thompson Decl., dated Jan. 10, 2007, at ¶ 3. A cell-confined inmate in this circumstance requires additional services by prison staff such as meal delivery and cell visitation by medical staff. *Id*. Though use of a

---

[5] Indeed Plaintiff's Disciplinary History is startling and certainly is not confined to the six instances noted above. Focusing only on the disciplinary sentences to be served upon his arrival at Upstate, we offer the following synopsis. Two of the sentences stem from Misbehavior Reports Plaintiff was issued while at Marcy, dated April 15, 1999, and May 14, 1999. Defs.' 7.1 Statement at ¶ 7; Selsky Decl., Ex. A (Holloway Disciplinary History). The Hearing determinations for these two Reports, which included, *inter alia*, an aggregate keeplock sentence of 180 days, were affirmed on appeal. Defs.' 7.1 Statement at ¶ 8. While at Mid-State, and again as relevant to the aggregate sentence to be served at Upstate, Plaintiff received four separate Misbehavior Reports on August 15, 1999, September 2, 1999, October 12, 1999, and October 22, 1999. *Id*. at ¶ 9. On each, he was provided a Hearing, found guilty, and received a sentence of, *inter alia*, thirty days keeplock (per infraction); he only appealed the Hearing determination regarding the October 12th Misbehavior Report, and such was affirmed on appeal. *Id*. at ¶¶ 10-12.

general population cell for such restricted confinement is feasible on a short-term basis, "[a]s a long-term proposition, . . . it [is] an inefficient use of the department's resources[.]" *Id*. On the other hand, Upstate is a prison specially designed to handle cell-confined inmates and, given the length of Plaintiff's keeplock sentence of approximately 240 days, it was more practical for Plaintiff to be transferred to Upstate to serve out the remainder of that keeplock sentence. *Id*. at ¶ 4. For these reasons, on December 27, 2000, Defendant Dan Kress, Corrections Counselor at Elmira, recommended that Holloway be transferred to Upstate to serve his 240-day keeplock sentence. Defs. 7.1 Statement at ¶ 16. This recommendation was approved by Defendant James Thompson, Senior Counselor at Elmira and by John Carvill[6] in DOCS' Office of Classification and Movement, who issued the order that Plaintiff be transferred to Upstate from Elmira; as aforementioned, such transfer took place on January 5, 2001. *Id*. at ¶ 17. Defendants Glenn Goord, then-Commissioner of DOCS, Floyd Bennett, then-Superintendent of Elmira, Thomas Ricks, then-Superintendent of Upstate, and John Glasheen, then-Assistant Director of the Office of Classification and Movement, were not involved in the decision to transfer Plaintiff to Upstate. *Id*. at ¶ 33.

While serving his sentence at Upstate, Plaintiff was treated the same as any other inmate sentenced to keeplock confinement at Upstate. *Id*. at ¶ 27. After his arrival at Upstate, Plaintiff incurred, in just four months, over a year's worth of additional keeplock for disciplinary violations. *Id*. at ¶ 18. He also accumulated seventy-four months of SHU time for more serious violations involving violent conduct on staff and an unhygienic act. *Id*. at ¶ 19. Pursuant to Department Regulations, Plaintiff began serving all of this additional SHU time at Upstate on May 5, 2001. *Id*. at ¶ 20.

---

[6] John Carvill is not a Defendant in this action.

## II. DISCUSSION

### A. Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir. 1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). "When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of the . . . pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e)], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir. 2000) (quoting FED. R. CIV. P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (alteration and emphasis in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (a court is to read a *pro se* party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they

suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001).

More specifically, this District's Local Rules provide that "[a]ny facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." N.D.N.Y.L.R. 7.1(a)(3) (emphasis in original). Local Rule 7.1(a)(3) further requires that the non-movant shall file a Statement of Material Facts which mirrors the movant's statement in matching numbered paragraphs and which sets forth a specific reference to the record where the material fact is alleged to arise. *Id*. The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot*, 2002 WL 368534, at *2 (N.D.N.Y. Mar. 1, 2002) (citing, *inter alia*, *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.*, 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id*. at 470-71.

In this case, as previously discussed, Holloway did not file a response to the Defendants' Motion for Summary Judgment. Consequently, this Court has accepted the properly supported facts contained in the Defendants' 7.1 Statement as true for purposes of this Motion. With this standard in mind, the Court now addresses the sufficiency of Holloway's claims.

### B. Due Process and Plaintiff's Intrastate Prison Transfer

Holloway asserts he should have received a hearing prior to his transfer to Upstate and in the absence of such hearing, his due process rights were violated. Defendants Kress and Thompson were directly involved in the decision to transfer Plaintiff, thus we consider Plaintiff's due process claim to be asserted against them. Plaintiff's claim, however, is wholly without merit.

To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are typically derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id*.

With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners.'" *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)). The Due Process clause does not protect against "every change in the conditions of confinement having a substantial adverse impact" on inmates if those changes are "within the normal limits or range of custody which the conviction has authorized the state to impose." *Sandin v. Conner*, 515 U.S. 472, 478 (1995). Instead, the Due Process Clause protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner." *Id*. at 484 (quoted in *Arce*

*v. Walker*, 139 F.3d at 333).

It is well-settled that an inmate has no right under the Due Process clause to be incarcerated in any particular correctional facility, and transfers among facilities do not need to be preceded by any particular due process procedure. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976)) (noting that the Constitution does not "guarantee that [a] convicted prisoner will be placed in any particular prison" nor does "the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system[]")); *see also Fox v. Brown*, 2007 WL 586724, at *9-10 (N.D.N.Y. Feb. 21, 2007). Though Holloway complains that his restrictions at Upstate were much greater than that experienced at Elmira, the fact that "life in one prison is much more disagreeable than in another does not itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." *Meachum v. Fano*, 427 U.S. at 225; *see also Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983) (citing, *inter alia*, *Meachum v. Fano*, 427 U.S. 215 (1976) & *Monyanye v. Haymes*, 427 U.S. 236 (1976) for the proposition that inmates have no constitutional right to be housed in a particular prison or a particular dormitory within a prison). Thus, the Due Process Clause itself clearly does not afford Holloway the protection sought.

Our inquiry does not end there, however, since liberty interests may also arise under state statutes and regulations. *Arce v. Walker*, 139 F.3d at 334 (citing *Kentucky Dep't of Corr.*, 490 U.S. at 460). To assert a state created liberty interest, an inmate must establish that his confinement or restraint (1) created an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Connor*, 515 U.S. at 484, and (2) that the "state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that

confinement or restraint," *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996). Regardless of whether Plaintiff can establish that he was subjected to an atypical and significant hardship, it is patently clear that New York has **not** created, by regulation or statute, any liberty interest in remaining at one particular prison. Indeed, it is the DOCS who possesses sole discretion to determine "where a [state] inmate will be housed." *Grullon v. Reid*, 1999 WL 436457, at *10 (S.D.N.Y. Jun. 24, 1999) (citing *United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995)); *see also Smolen v. Lanier*, 2007 WL 2027841, at *2 (W.D.N.Y. July 11, 2007). Furthermore, not only do New York State Regulations permit keeplock sentences to be served in SHU, but further contemplate that assignments to SHU will be subject to the same property, visiting, package, commissary, telephone, and correspondence limitations typically experienced in SHU confinement. N.Y. COMP. CODES R. & REGS. tit. 7 §§ 301.6 & 302.2.

Thus, regardless of whether Plaintiff alleges his due process rights were violated when he was transferred to another institution or when he was forced to serve his keeplock sentence in SHU, since Holloway had no liberty interest in remaining at one specific facility to serve his keeplock sentence or to remain in cell confinement to serve such sentence, there was no need to provide him with a hearing prior to his transfer to another prison and into SHU. Accordingly, this Court recommends **granting** Defendants' Motion for Summary Judgment and **dismissing** Defendants Kress and Thompson from this action.

### B.  Personal Involvement

As to the remaining Defendants, Plaintiff alleges that 1) Defendant Goord failed to stop Plaintiff's transfer to Upstate and knew of or should have known of his subordinates' acts, yet failed to take action, Compl. at ¶¶ 48-50; 2) Defendant Glasheen approved the transfer and failed to

provide Plaintiff with a hearing prior to such transfer, Compl. at ¶¶ 51-53; 3) Defendant Bennett failed to stop Plaintiff's transfer to Upstate and failed to provide Plaintiff with a hearing prior to such transfer, Compl. at ¶¶ 54-57; and 4) Defendant Ricks failed to transfer Plaintiff from Upstate back to Elmira and failed to provide Plaintiff with a hearing prior to keeping him confined at Upstate, Compl. at ¶¶ 58-60.

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims, *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

Despite Plaintiff's allegations to the contrary, and in light of his failure to oppose Defendants' Motion, it is uncontested that Defendants Goord, Glasheen, Bennett, and Ricks played no part in the decision to transfer Plaintiff. To the extent Plaintiff seeks to hold any one of these Defendants liable on the basis of supervisory liability,[7] such claim similarly fails since, as explained above, Plaintiff's transfer to Upstate without a hearing did not violate his due process rights. Therefore, this Court recommends **dismissing** these Defendants as well.

---

[7] The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply because he holds a high position of authority).

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 80) be **GRANTED** and the entire Complaint **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:  August 29, 2007
       Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge